**THREE KEYS, LTD., Plaintiff,**

v.

**SR UTILITY HOLDING CO., et al., Defendants.**

**Civil No. 06-0664 (JBS).**

United States District Court, D. New Jersey.

Dec. 8, 2006.

John A. Guernsey, Esq., Kevin Dooley Kent, Esq., Mark Edward Seiberling, Esq., Conrad O'Brien Gellman & Rohn, Cherry Hill, NJ, for Plaintiff.

Eric M. Wood, Esq., Ronald Jay Shaffer, Esq., Allison L. Kashon, Esq., Fox Rothschild LLP, Atlantic City, NJ, for Defendants.

## OPINION

SIMANDLE, District Judge.

This matter comes before the Court on the motion of Defendants—SR Utility Holding Company, the Estate of Samuel Rappaport, Wil Rappaport, Tracy Rappaport Scott, Mellon Bank, Rita Rappaport, and Carol Codek—to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1). Defendants claim that this Court lacks subject matter jurisdiction to hear this case under the probate exception to federal jurisdiction and the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Alternatively, Defendants move to dismiss this action, presumably pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that collateral estoppel and res judicata preclude the relief Plaintiff is seeking.

## I. BACKGROUND

Plaintiff characterizes this case as an action by a minority shareholder to remedy shareholder oppression, pursuant to its ownership of shares of stock in Defendant SR Utility Holding Company. Defendants aver that this action is the attempt by the former disgraced executor of Samuel Rappaport's Estate, Richard Basciano, to retain his ill-gotten gains from the Estate in a forum that he hopes will be more amenable to his claims than the Pennsylvania courts have been.

According to the Complaint, Plaintiff Three Keys is a Maryland corporation with its principal place of business in New York and owns a 24% minority interest in SR Utility. (Compl. ¶ 1.) Defendant SR Utility is a New Jersey corporation with its principal place of business in Pennsylvania. (Compl. ¶ 2.) SR Utility owns the Atlantic City Sewerage Company, a New Jersey corporation. (*Id.*) Defendants Wil Rappaport, Tracy Rappaport Scott, and Mellon Bank are the administrators of the Estate of Samuel Rappaport. (Compl. ¶ 3.) Wil Rappaport is a Pennsylvania resident and owns 12% of the SR Utility shares. He is also a beneficiary of the Estate.

(*Id.*) Defendant Tracy Rappaport Scott is also a resident of Pennsylvania, owns 12% of the SR Utility shares, and is a beneficiary of the Estate. (Compl.¶5.) Defendant Mellon Bank is a Pennsylvania Corporation with its principal place of business in Pennsylvania. (Compl.¶6.) Defendant Rita Rappaport is a resident of Pennsylvania, a beneficiary of the Estate, and the mother of Tracy and Wil. (Compl.¶7.) Defendant Carl Cordek is a resident of Pennsylvania, owns a 1% interest in SR Utility, and is Director and Chairman of the Board of SR Utility. (Compl.¶8.) Cordek also serves as the controller of the Estate's management company, according to the Complaint. (*Id.*)

Plaintiff claims that Defendants are unlawfully depriving him of more than $900,000 in dividends by placing that money in escrow. (Compl.¶39.) Thus, Plaintiff claims the amount in controversy exceeds $75,000, the parties are completely diverse, and that this Court, therefore, has jurisdiction over the action pursuant to 28 U.S.C. § 1332. (Compl.¶9.)

## II. MOTION TO DISMISS FOR LACK OF JURISDICTION

### A. 12 (b)(1) Standard

When deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may not assume the facts pled in the complaint are true; rather the Court must look into the matter on its own and determine whether it has jurisdiction.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Thus, for purposes of this motion to dismiss for lack of subject matter jurisdiction, the Court must determine what facts are supported by the record. The Court has

> more latitude as to modes of proof in the disposition of issues of jurisdictional fact[, *see* ] *Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320 (3d Cir.1972); *Nelson v. Keefer,* 451 F.2d 289 (3d Cir. 1971)[, b]ut ... the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention[, e.] g., *Groh v. Brooks,* 421 F.2d 589, 594 (3d Cir.1970); *Shahmoon Industries, Inc. v. Imperato,* 338 F.2d 449 (3d Cir. 1964).

*American Federation of Musicians v. Bonatz,* 475 F.2d 433, 437 (3d Cir.1973).

The parties have presented the Court with extensive briefing on this issue, including Plaintiff's Opposition and Sur–Reply. Plaintiff has also supplied the Court with the Stock Purchase Agreement, attached to the Complaint (Pl.Compl.Ex.A) and Defendants have attached ten exhibits to their Motion to Dismiss. Plaintiff has not requested a hearing but has presented the Court with additional materials in aid of its arguments for jurisdiction. (Pl. Exs.A–F.) In accord with *Bonatz,* the Court will rely on the record the parties have created in determining the jurisdictional issue.

### B. The Probate Exception

The probate exception to federal court jurisdiction is a judicially-created doctrine that restricts the power of the federal

courts to hear probate cases. This doctrine has been premised on the reasoning that

the Judiciary Act of 1789 and its successors granted the federal courts equitable powers coextensive with those held by the English Chancery Court in 1789. *See* Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78; *Markham,* 326 U.S. at 494, 66 S.Ct. 296, 90 L.Ed. 256; *Canal–Louisiana,* 215 U.S. at 43, 30 S.Ct. 10, 54 L.Ed. 80. Because probate matters in late eighteenth century England were assigned to the ecclesiastical court and not to the Chancery Court, the federal courts are without the power to probate a will or administer an estate.

*Golden ex rel. Golden v. Golden,* 382 F.3d 348, 357 (3d Cir.2004). Courts have also reasoned that

the same result occurs where the complaint seeks legal relief. The power of the federal courts to grant legal relief was limited by the Judiciary Act of 1789 to be coextensive with the English common-law courts. Like the Chancery Court, the common-law courts did not consider probate matters.

*Id.* at 357 n. 9.

■ However, "the Supreme Court recently and unanimously reminded the lower courts in *Marshall* that the probate exception is 'narrow,' and should not be used as an excuse to decline to exercise jurisdiction over actions merely because they involve a 'probate related matter.'" *Abercrombie v. Andrew College,* 438

F.Supp.2d 243, 251 (S.D.N.Y.2006). The Supreme Court has recently held:

[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall v. Marshall,* —— U.S. ——, ——, 126 S.Ct. 1735, 1748, 164 L.Ed.2d 480 (2006).

After the Supreme Court's decision in *Marshall* and supplemental briefing from the parties, the issue before the Court is whether this is an action "endeavoring to dispose of property that is in the custody" of the Court of Common Please of Bucks County, Pennsylvania, Orphans' Court Division ("the Orphans' Court"), which is probating the Rappaport Estate, and is therefore barred by the probate exception to federal diversity jurisdiction.[1] Thus, the Court must determine whether the relief Plaintiff is seeking in this action relates to any property in the custody of the Pennsylvania court.

The Court looks to the Complaint to determine what property is at issue in this action. Plaintiff models this action as one of minority shareholder oppression and asks this Court, in Counts I, III[2], IV[3], to (1) declare that the transfer of SR Utility

1. Prior to *Marshall* the parties also argued whether the Orphans' Court had exclusive jurisdiction over this matter under Pennsylvania law. *Marshall* apparently obviates the need to address that argument, as the Supreme Court made clear that federal law is the only proper source for determining federal jurisdiction. *Marshall v. Marshall,* —— U.S. ——, ——, 126 S.Ct. 1735, 1750, 164 L.Ed.2d 480 (2006) ("At issue here, however, is not the Texas Probate Court's jurisdiction, but the federal courts' jurisdiction to entertain Vickie's tortious interference claim. Under our federal system, Texas cannot render its probate courts exclusively competent to entertain a claim of that genre.")

2. Count III alleges breach of fiduciary duty.

3. Count IV alleges "Breach of Covenant of Good faith and Fair Dealing."

stock to Three Keys was valid, (2) direct the release of approximately $900,000 of Three Keys's SR Utility dividends that the defendants, majority shareholders, have placed in an escrow account, (3) enjoin the defendants from placing future Three Keys SR Utility dividends in escrow, (4) appoint a receiver for SR Utility, and (5) award Three Keys compensatory and punitive damages for the allegedly oppressive conduct.[4] It is clear that Plaintiff asks the Court to exercise control over the escrow account, the SR Utility shares transferred to Three Keys, and the dividends those shares will produce.

■ The record presented to the Court does not prove that the escrow account, the SR Utility shares transferred to Three Keys, and the dividends are "property that is in the custody of a state probate court." *Marshall*, 126 S.Ct. at 1748. This aspect of the probate exception merely restates the general proposition that "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* As discussed below, the probate court removed Basciano and his paramour as the executors of the Estate for, among other things, wrongfully transferring SR Utility shares from the Estate to Basciano via Three Keys. The court did not, however, exercise control over the shares or other property at issue here.[5] Nor did the Court order the creation of the escrow account; according to the Complaint—and there is no evidence to the contrary—the parties voluntarily agreed to place the SR Utility Shares in escrow for a brief period

of time. Thus, Plaintiff is not "endeavoring to dispose of property that is in the custody" of the Pennsylvania Orphan's Court. The Court recognizes that the probate exception to diversity jurisdiction is "narrow," *Marshall*, 126 S.Ct. at 1744, and finds that it does not deprive this Court of subject matter jurisdiction in this case.

## C. *Rooker–Feldman* Doctrine

■ Next, the Court must examine Defendants' claim that the Court lacks jurisdiction under the *Rooker–Feldman* doctrine. Although the matter is closely poised, the simple fact that Three Keys was not a named party in the Orphans' Court adjudication is conclusive.

> Whatever the impact of privity principles on preclusion rules, *Rooker–Feldman* is not simply preclusion by another name. The doctrine applies only in "limited circumstances," *Exxon Mobil*, *supra*, at 291, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. The *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.

*Lance v. Dennis*, 546 U.S. 459, ——, 126 S.Ct. 1198, 1202, 163 L.Ed.2d 1059 (2006) (per curiam).

Because all of Plaintiff's relief depends on this Court finding, contrary to the Pennsylvania courts, that the transfer of

---

**4.** Two additional counts, for damages and declaratory relief, do not seek to dispose of property and therefore are not relevant to this probate exception inquiry. In Count II, Plaintiff seeks a declaratory judgment that the transfer was valid, that Defendants have no right to Three Keys' shares, and that Three Keys is entitled to the escrow account as well as to future dividends. In Count V, a civil

conspiracy count, Three Keys only seeks an award of compensatory and punitive damages. These claims, however, are relevant to the preclusion discussion, below.

**5.** The court's judgment, however, is dispositive of the propriety of that transfer, as discussed below.

shares from the Estate to Three Keys was valid and arguably this action asks this District Court to overturn the judgment of a state court, it appears on first glance that the *Rooker–Feldman* doctrine deprives this Court of jurisdiction. As the Court of Appeals for the Third Circuit explained,

> [u]nder the *Rooker–Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling. *Whiteford v. Reed,* 155 F.3d 671, 674 (3d Cir.1998) (citing *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996)). As such, application of the *Rooker–Feldman* doctrine is necessarily limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

> In explaining the jurisdictional bar, this Court has described the *Rooker–Feldman* doctrine as precluding lower federal court jurisdiction over claims that were actually litigated or those "inextricably intertwined" with adjudication by a state court. *Parkview Assoc. P'ship v. City of Lebanon,* 225 F.3d 321, 325 (3d Cir.2000) We have further explained that "a federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under *Feldman,* '[w]here federal relief can only be predicated upon a conviction that the state court was wrong.'" *Id.* (quoting *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir.1989) (quoting *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J.,

concurring))). *See also Exxon Mobil,* 544 U.S. at 293, 125 S.Ct. 1517, 161 L.Ed.2d 454 ("In parallel litigation, a federal court may be bound to recognize the claim-and issue-preclusive effects of a state-court judgment," but the federal court is divested of jurisdiction under *Rooker–Feldman* only where it is asked to redress injuries caused by an unfavorable state-court judgment.). Importantly, if a plaintiff's claim in federal court is inextricably intertwined with a previous state court adjudication, the district court lacks jurisdiction over the claim even if it was not raised in the state court. *Id.* at 327, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454.

*Taliaferro v. Darby Tp. Zoning Bd.,* 458 F.3d 181, 192–93 (3d Cir.2006) (emphasis added). "[A] party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the [United States] Supreme Court under § 1257, not a separate action in federal court." *Parkview Associates P'ship,* 225 F.3d at 324.

Pursuant to litigation to remove Richard Basciano and Lois Palmer as Executors of the Estate of Samuel Rappaport, the Orphans' Court made several findings of fact:

61. On March 31, 1997, Richard Basciano, as buyer, purchased for his children 24% of the outstanding shares of SR Utility holding Company, a company owned by Samuel Rappaport before his death and which is now owned by the Estate.

62. SR Utility owns the Atlantic City Sewer Company.

63. Richard Basciano, as executor, set the price and terms for the sale of the stock.

[ . . . ]

71. Richard Basciano did not seek or obtain court approval to acquire on behalf of his children a 24% interest in SR Utility from the Estate.

[. . .]

96. Richard Basciano in total disregard of his fiduciary obligations as Executor has treated the property of the Estate as if it were his own personal property.

97. Richard Basciano has personally profited from his position as Executor.

98. In addition to his pattern of self-dealing without Court approval, Richard Basciano's actions in converting $220,000 of monies owed to the Estate requires his immediate removal as Executor.

*In re Estate of Samuel Rappaport,* No. 9400547, slip op. (Pa.O.C. Aug. 23, 2002)(Def.Ex.A.) The Court also determined that the transfer of the SR Utility stock to Three Keys was contrary to Pennsylvania law:

> Basciano engaged in a series of self-dealing transactions where he or family and friends received ownership interests in assets of the estate. Basciano never sought or obtained court approval of these transactions as required by 20 Pa. C.S.A. § 3356 . . . The Will of Samuel Rappaport did not authorize the Executors to engage in self-dealing without obtaining Court approval pursuant to 20 Pa.C.S.A. § 3356.

These acts, including the transfer of the shares at issue in this litigation, constituted a breach of Basciano's fiduciary duty. Further, the Court found, "Richard Basciano and Lois Palmer have wasted and mismanaged the assets of the Estate."

Not only are the issues in this case "inextricably intertwined" with the proceedings in the state court, but relief in this action could "only be predicated upon a conviction that the state court was wrong." *Parkview Associates P'ship,* 225 F.3d at 325. Prior to *Lance,* the Court would lack jurisdiction to hear this action by Three Keys, seeking to enforce an agreement the Pennsylvania court has ruled to be unlawful.

However, as all parties acknowledge, Three Keys was not the actual party in the Orphans' Court litigation, Basciano was. Defendants argue that this is a distinction without a difference; although technically Three Keys has not been joined in the Orphans' Court litigation, the individuals involved and the sale ruled upon are the same. As Basciano admitted in his briefing to the Orphans' Court, these shares were placed in "an entity affiliated with Basciano's children." (Def. Ex. G at 2299a). The Stock Purchase Agreement Plaintiff attached to the Complaint, dated March 31, 1997, shows that this "entity" was Three Keys, the Plaintiff in this action, and that the ownership interest Plaintiff is attempting to validate here is the very one ruled illegal by the Orphans' Court. (Pl. Compl. Ex. A at 1–2, 4, 9–11.)

■ Although there may be some "circumstances, however limited, in which *Rooker–Feldman* may be applied against a party not named in an earlier state proceeding *e.g.,* where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent," *Lance,* 126 S.Ct. at 1202 n. 2, the Court is wary of extending *Rooker–Feldman* to this case on the ground that a corporation or partnership can only act through its principals, as Defendants argue the Court should. The Supreme Court has "warned that the lower courts have at times extended *Rooker–Feldman* 'far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738.' [*Exxon Mobil v. Saudi Basic Indus. Corp.,*] 544 U.S. [280], at 283, 125 S.Ct. 1517, 161 L.Ed.2d 454. *Rooker–Feldman,*

[the Court] explained, is a narrow doctrine...." *Lance*, 126 S.Ct. at 1201. Accordingly, this Court declines to dismiss the Complaint as barred by the *Rooker–Feldman* doctrine.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. 12(b)(6) Standard and Collateral Estoppel

 A motion to dismiss on the grounds of collateral estoppel or *res judicata* is properly considered as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Rycoline Prod. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir.1997). In considering a Rule 12(b)(6) motion, all well-pleaded allegations of fact and reasonable inferences that may be drawn from them are accepted as true to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). However, "a court may [also] consider an undisputedly authentic document ... if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)

### B. Collateral Estoppel Bars this Action

 It is obvious from the Complaint and the decision of the Pennsylvania Orphans' Court that ordinary rules of collateral estoppel bar this action.

Issue preclusion, also known as collateral estoppel, bars relitigation of issues adjudicated in a prior action. *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir.1990). By contrast, claim preclusion, with which it is often confused, "gives dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, could have been raised." *Id.* at 1070. *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1266 (3d Cir.1994). "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 80–81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *see also* 28 U.S.C. § 1738 (full faith and credit statute).

 In this case, Defendants argue that the decision of the Pennsylvania Orphans' court, finding the facts outlined above and deciding that the transfer of SR Utility shares to Basciano was contrary to law, precludes this action. Under Pennsylvania law, a court may apply collateral estoppel to an issue if the issue decided in the prior adjudication was identical with the one presented in the later action; there was a final judgment on the merits; and the party against whom the claim is asserted was a party to the prior adjudication who had a full and fair opportunity to litigate the issue then in question, or is in privity with such a party. *Odgers v. Com., Unemployment Compensation Bd. of Review*, 514 Pa. 378, 390 n. 13, 525 A.2d 359 (1987).[6] Applying this standard to the

---

**6.** Other Pennsylvania Supreme Court formulations of this rule, if read literally, seem to require that the party to be precluded, and not just his privy, must have had the opportunity to litigate. *Safeguard Mut. Ins. Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664 (1975) ("a plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.") This additional requirement would seem to frustrate the purpose of determining privity. Regardless, in this case it is clear that Three Keys also had

Complaint and the court decisions, the Court finds that it is appropriate to apply collateral estoppel to bar this action.

After examining the Complaint, the decision of the Pennsylvania Orphans' Court, and the stock sale agreement that Plaintiff attached to the Complaint, the Court is convinced that this case calls for the application of collateral estoppel. First, there are several issues decided in the prior action that would preclude this action. Most simply, the Orphans' Court decided that Basciano's sale of shares to Three Keys was not legal. *See, supra,* slip op. at 11–12. Second, this was a final decision on the merits. Indeed, the decision was affirmed by Pennsylvania's Appellate and Supreme Courts, after Basciano claimed the trial court behaved improperly. Third, although Three Keys was not a party to the prior adjudication, the company is clearly in privity with Basciano such that it is proper to apply collateral estoppel to Three Keys in this action. In the Complaint, Three Keys refers to and attaches the Basciano agreement at issue in that prior litigation. Fourth, there is no doubt that Basciano and Three Keys had full and fair opportunities to litigate the validity of the stock sale. Basciano's privies cannot seek a second bite at the apple here merely because they disagree with the state court decisions.

Without being able to show that the stock sale was valid, Plaintiff has stated no claim on which relief may be granted and the motion to dismiss must be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## IV. CONCLUSION

Because Three Keys's success in this action depends on this Court reversing a decision on a precluded issue, it is proper to grant the motion to dismiss.[7] The Court will deny Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), but grant the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The accompanying Order will be entered.

---

an opportunity to fully and fairly litigate the prior action. First, Three Keys has made no argument to the contrary and, second, the Defendants are currently attempting to add Three Keys as a party to the Orphans' Court litigation, which Three Keys is resisting. (Pl.'s Br. at 10; Order of E.D. Pa. remanding case to state court at Pl's Ex. J.)

7. The Court will not address the arguments regarding abstention. Having found that collateral estoppel precludes relitigation of the validity of the stock sale, no other finding is necessary.