

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-20-2008

# Three Keys Ltd v. SR Util Holding Co

Precedential or Non-Precedential: Precedential

Docket No. 07-1005

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Three Keys Ltd v. SR Util Holding Co" (2008). *2008 Decisions.* Paper 581.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/581

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1005
_____

THREE KEYS LTD.,
a Maryland Corporation,

Appellant

v.

SR UTILITY HOLDING COMPANY, a New Jersey
Corporation; THE ESTATE OF SAMUEL RAPPAPORT,
Deceased, as the majority shareholder of SR Utility Holding
Company; WIL WES RAPPAPORT, individually and as
Administrator d.b.n.c.t.a. of the Estate of Samuel Rappaport,
Deceased; TRACY RAPPAPORT SCOTT, individually and as
Administrator d.b.n.c.t.a. of the Estate of Samuel Rappaport,
Deceased; MELLON BANK N.A., as Administrator d.b.n.c.t.a.
of the Estate of Samuel Rappaport, Deceased; RITA
RAPPAPORT, an individual; CARL CORDEK, an individual,

_____

On Appeal from an Order of the United States District Court
for the District of New Jersey
(No. 06-cv-664)

District Judge: Honorable Jerome B. Simandle

_____

Argued January 7, 2008

Before: FUENTES, JORDAN, <u>Circuit Judges</u>, and
O'NEILL, JR,* <u>District Judge</u>.

---

* Honorable Thomas N. O'Neill, Jr., United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

(Opinion Filed: August 20, 2008)

John A. Guernsey (argued)
Kevin D. Kent
Mark E. Seiberling
Conrad, O'Brien, Gellman & Rohn
1515 Market Street 16th Floor
Philadelphia, PA 19102

Thomas A. Leonard
Louis B. Kupperman
Obermayer, Rebmann, Maxwell & Hippel
1617 John F. Kennedy Boulevard
One Penn Center, 19th Floor
Philadelphia, PA 19103

     Counsel for Appellants

Ronald J. Shaffer (argued)
Fox Rothschild
2000 Market Street
10th Floor
Philadelphia, PA 19103

Eric M. Wood
Horn, Goldberg, Gorny, Plackter, Weiss & Perskie
1300 Atlantic Avenue
Suite 500 Citicenter Building
Atlantic City, NJ 08401

Allison L. Kashon
Fox Rothschild
1301 Atlantic Avenue
Suite 400, Midtown Building
Atlantic City, NJ 08401

     Counsel for Appellees

OPINION OF THE COURT

FUENTES, Circuit Judge:

Samuel Rappaport died in 1994 leaving an estate valued at over $58 million to his wife and two children. In 2002, the Pennsylvania Orphan's Court removed the estate executors, Richard Basciano and Lois Palmer, after finding that they engaged in multiple acts of mismanagement, conversion of estate assets, and self-dealing. The present action was initiated in the United States District Court for the District of New Jersey by Three Keys LTD, a company created by Basciano, to gain access to estate property transferred in one of his self-dealing transactions. The District Court exercised diversity jurisdiction and dismissed the complaint on the ground of issue preclusion. Because the District Court lacked the power to entertain this matter in the first instance, under the probate exception to federal courts' diversity jurisdiction, we will remand the case with instructions to dismiss for lack of jurisdiction.

## I.

## A.

At the time of his death, Samuel Rappaport owned 100% of the shares in SR Utility Holding Company ("SR Utility"), whose principal asset was the Atlantic City Sewer Company. SR Utility was part of Samuel's estate (the "Estate"), to be administered for his wife, Rita, and two children, Wil Rappaport and Tracy Rappaport Scot (collectively, the "Beneficiaries").[1] However, two and a half years after Samuel's death, on March 31, 1997, Basciano negotiated the sale of 24% of the Estate's interest in SR Utility to Three Keys LTD ("Three Keys"), an entity created by Basciano for

_____

[1]The Estate also included commercial properties not at issue in this appeal, such as parking garages and shopping centers.

3

his children's benefit (the "SR Utility Stock Transfer").[2] Basciano and Palmer, Basciano's personal assistant and paramour, who he appointed to be the second executor required under Samuel's will, signed the purchase agreement (the "Purchase Agreement") on behalf of the Estate. However, contrary to Pennsylvania law for transactions between an estate and an estate's "personal representative," Basciano and Palmer failed to obtain court approval before negotiating the agreement. 20 Pa. Cons. Stat. § 3356 ("[T]he personal representative, in his individual capacity, may . . . purchase . . . property belonging to the estate, subject, however, to the approval of the court . . . .").

On February 23, 2001, suspicious about the Estate's transactions with Basciano's companies, the Beneficiaries petitioned the probate court—the Court of Common Pleas of Bucks County, Pennsylvania, Orphans' Court Division (the "Orphans' Court")—to compel Basciano and Palmer to file an accounting. In response, the Executors filed a final accounting on April 25, 2001, setting forth all of the Estate's transactions. The Beneficiaries filed objections to the final accounting, alleging numerous instances of self-dealing, including the SR Utility Stock Transfer. Simultaneously, the Beneficiaries brought an action in the Orphan's Court to remove Basciano and Palmer as executors of the Estate under the Pennsylvania Probate, Estates and Fiduciary Code, which provides for the removal of an executor if he or she "is wasting or mismanaging the estate, . . . has failed to perform any duty imposed by law," or when "the interests of the estate are likely to be jeopardized by his [or her] continuance in office." 20 Pa. Cons. Stat. § 3182.

While the action to remove Basciano and Palmer as executors was pending, Basciano personally received a payment of $220,000 that was due to the Estate for the sale of an Estate-owned

---

[2]The transaction also included the sale of SR Utility stock to Wil Rappaport (12%), Tracy Rappaport Scot (12%), and Carl Cordek, the Chairman of the Board of Directors of SR Utility (1%). After the SR Utility Stock Transfer, the Estate was left with 51% of SR Utility's shares.

4

shopping center, again without obtaining approval from the Orphans' Court. The Beneficiaries responded by filing an additional petition with the Orphans' Court seeking the executors' immediate removal.

On August 23, 2002, the Orphans' Court removed Basciano and Palmer as executors.[3] In its opinion, the Orphans' Court made 100 "Findings of Fact," including:

> 61.    On March 31, 1997, Richard Basciano, as buyer, purchased for his children 24% of the outstanding shares of SR Utility Holding Company, a company owned by Samuel Rappaport before his death and which is now owned by the Estate.
>
> ***
>
> 71.    Richard Basciano did not seek or obtain court approval to acquire on behalf of his children a 24% interest in SR Utility from the Estate.

(App. 96-97.) The Orphans' Court also made seven "Conclusions of Law," including:

> 2.    The Will of Samuel Rappaport did not authorize the Executors to engage in self-dealing without obtaining Court approval pursuant to 20 Pa.C.S.A. § 3356.
> 3.    Richard Basciano breached his fiduciary duty to the Estate when he engaged in multiple self-dealing transactions with assets of the estate without obtaining prior court approval.

---

[3]While the Orphans' Court ruled on the Beneficiaries' motion to remove Basciano and Palmer as executors, it did not rule on their objections to the final accounting. Those objections are still pending in the Orphans' Court.

5

***

5.      Richard Basciano and Lois Palmer have wasted and mismanaged the assets of the Estate.

6.      The interests of the Estate are likely to be jeopardized by the continuance in office of Richard Basciano and Lois Palmer as Executors . . . .

(App. 102-103.)

Thereafter, on October 4, 2002, the Orphans' Court ordered that letters of administration be issued to Wil, Tracy, and Mellon Bank to settle the remainder of the Estate.[4]

The Orphans' Court refused to certify its order removing Basciano and Palmer as "final and appealable." Under Pennsylvania law, absent a trial court's determination of finality, an order removing a fiduciary is not an appealable order. In Re Estate of Sorber, 803 A.2d 767, 769 (Pa. Super. 2002). Because Basciano could not challenge his removal through an ordinary appeal, he petitioned the Pennsylvania Supreme Court to grant extraordinary relief pursuant to its "King's Bench" power.[5] The

---

[4]Letters of administration are formal documents appointing administrator(s) of an estate, issued when a will fails to name an executor or if the executor appointed is disqualified or removed by court order. See 20 Pa. Cons. Stat. § 3155; Black's Law Dictionary 925 (8th ed. 2004).

[5]The Pennsylvania Supreme Court has "the power generally to minister justice . . . as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722." 42 Pa. Cons. Stat. § 502. The King's Bench power has been interpreted in Pennsylvania as "the power of general superintendency over inferior tribunals," Carpentertown Coal & Coke Co. v. Laird, 61 A.2d 426, 428 (Pa. 1948), and permits the exercise of jurisdiction even if "there is no final order

Supreme Court granted the petition, and asked Pennsylvania's intermediate appellate court, the Superior Court, to determine whether Basciano's removal as executor was proper.

On December 23, 2003, the Superior Court applied the same standard of review as it would for a regular appeal of an order removing an executor, and found that the Orphans' Court did not err by removing Basciano. In so doing, it concluded that the Orphans' Court's findings of fact were supported by substantial evidence, including that "Basciano, without court approval, purchased 24% of the shares of an estate-owned holding company for his children." (App. 125.) These findings of fact "relat[ed] to waste of estate assets, self-dealing and mismanagement, which, . . . must be seen as harmful to the estate." (App. 124-25.) The Superior Court's decision was then appealed to the Pennsylvania Supreme Court, which summarily affirmed on April 11, 2005.

**B.**

In 2002, under the threat of litigation, Basciano's company, Three Keys, agreed to place all of its SR Utility dividends into an escrow account. On February 10, 2006, in an effort to gain access to the dividends, which had reached approximately $900,000, Three Keys initiated the present action by filing a complaint in District Court against SR Utility, the Estate, the Beneficiaries, Mellon Bank, and Carl Cordek (collectively, the "Defendants"). Three Keys' complaint enumerates five counts, each of which is premised on Three Keys' alleged ownership interest in SR Utility. The complaint contends that the Defendants "den[ied] Three Keys of its fair and equitable interest in [SR Utility], along with access to approximately $900,000 of its SR Utility dividends currently being unjustly held in an escrow account at the demand of the Defendants." (App. 31.) The primary relief sought is the release of the SR Utility dividends to Three Keys.

---

as to which [the Pennsylvania Supreme Court] can exercise appellate jurisdiction." In re Avellino, 690 A.2d 1138, 1140-41 (Pa. 1997).

Count One is labeled "Minority Shareholder Oppression," and asserts that the Defendants, who collectively own 76% of SR Utility's shares, are preventing Three Keys, the minority shareholder, from accessing its dividends. (App. 39-43.) As relief, Three Keys requests a declaration that the Purchase Agreement was valid; the release of the SR Utility dividends held in escrow; and an order enjoining the Defendants from escrowing future dividends, requiring that future dividends be paid to Three Keys, appointing a receiver for SR Utility, and awarding Three Keys compensatory and punitive damages.

Count Two is labeled "Declaratory Judgment," and seeks resolution of the dispute between Three Keys and the Defendants "as to their legal relations with respect to the . . . Purchase Agreement." (App. 43-44.) As relief, Three Keys requests a declaration that the Purchase Agreement is valid, that the Defendants have no right to the 24% interest in SR Utility transferred to Three Keys, and that the Defendants' potential claims against Three Keys are time-barred. It also seeks the release of the dividends from the escrow account.

Count Three is for "Breach of Fiduciary Duty," and alleges that the Defendants, in their capacity as majority shareholders and thus fiduciaries, have unfairly prevented Three Keys from accessing its interest in SR Utility. (App. 45.) For relief, Three Keys seeks the release of the $900,000 in SR Utility dividends, an order enjoining the Defendants from continuing to insist on escrowing the dividends, the payment of future dividends directly to Three Keys, and compensatory and punitive damages.

Count Four alleges "Breach of [the] Covenant of Good Faith and Fair Dealing." (App. 48.) In particular, this Count alleges that the Defendants, who were parties to the Purchase Agreement, breached the implied covenant of good faith and fair dealing, resulting in financial losses. As relief for this loss, Three Keys requests the release of the SR Utility dividends currently in escrow, the payment of future dividends directly to Three Keys, and compensatory and punitive damages.

Finally, Count Five is for "Civil Conspiracy," and alleges

that the Defendants conspired to force Three Keys into escrowing its SR Utility dividends and as a result "Three Keys suffered substantial financial hardship, including the inability to access approximately $900,000 of its rightfully earned and accrued SR Utility dividends." (App. 50-51.) As relief for Count Five, Three Keys seeks compensatory and punitive damages.

In response to Three Keys' complaint, the Defendants filed a motion in the District Court to dismiss the complaint, asserting three alternate theories: the probate exception to federal jurisdiction, the Rooker-Feldman doctrine, and issue preclusion based on the removal proceedings.

On December 8, 2006, the District Court concluded that it had jurisdiction to rule on the complaint under 28 U.S.C. § 1332, but nevertheless dismissed the action based on issue preclusion—that is, the District Court concluded that Three Keys could not relitigate the validity of the SR Utility Stock Transfer, an issue that had been resolved in the removal proceedings.[6] Three Keys filed a timely notice of appeal. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In any appeal, "the first and fundamental question is that of jurisdiction." Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003) (citation omitted). We must assess our jurisdiction regardless of whether a district court correctly disposed of a case on the merits, and regardless of whether the

---

[6]While Three Keys was not a party to the proceedings to remove Basciano and Palmer, the District Court reasoned that issue preclusion barred the action because Three Keys "is clearly in privity with Basciano," considering that Three Keys is an entity associated with Basciano's children and appears to have been created, funded, managed, and controlled by Basciano. Three Keys, Ltd. v. SR Utitlity Holding Co., 464 F. Supp. 2d 388, 397 (D.N.J. 2006).

9

issue was raised by the parties on appeal. See id.[7] Therefore, our analysis begins by determining whether the "probate exception" to diversity jurisdiction prevents consideration of any or all of the complaint.

The probate exception is a jurisdictional limitation on the federal courts originating from the original grant of jurisdiction in the Judiciary Act of 1789. As the Supreme Court observed in Markham v. Allen, the "jurisdiction conferred by the Judiciary Act of 1789, which is that of the English Court of Chancery in 1789, did not extend to probate matters." 326 U.S. 490, 494 (1946) (citation omitted). While the general idea that federal courts lack jurisdiction to adjudicate "probate matters" has been invoked frequently by federal courts, the precise contours of the limitation have proven difficult to draw. In Markham, the Supreme Court held that

> while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property *where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.*

Id. (emphasis added). Unfortunately, this explication did little to guide federal courts as to when a potential final judgment's

---

[7]As a jurisdictional limitation, the failure of either party to brief the probate exception on appeal does not waive the issue. See Bracken v. Matgouranis, 296 F.3d 160, 162 (3d Cir. 2002) ( "[T]his Court has a continuing obligation to *sua sponte* raise the issue of subject matter jurisdiction if it is in question."); Morel v. INS, 144 F.3d 248, 251 n.3 (3d Cir. 1998) ("[A federal] court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion.") (quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

10

"interfere[nce] with the state court's possession" of property would render the federal court without jurisdiction. Id.

We wrestled with the scope of matters "interfering" with the probate in Golden ex rel. Golden v. Golden, 382 F.3d 348 (3d Cir. 2004). In Golden, the testator divided her assets into equal shares for three beneficiaries in her will. When the testator became ill, she executed an addendum that drastically reduced the amount of the legacy to two of her beneficiaries, increasing the share of the third beneficiary, who was also the estate executor and a witness to the addendum. Following the testator's death, those two beneficiaries sued the third, alleging common law torts, including fraud and slander, and "several grounds for relief that relate[d] to probate law, including undue influence and breach of fiduciary duty as the executor of a will." Id. at 352. After acknowledging the confusion arising out of the exact scope of the probate exception, we stated that if the resolution of an action, including an *in personam* action, would "undercut the past probate of a will or result in the federal court 'assum[ing] general jurisdiction of the probate or control of the property in the custody of the state court,'" we would dismiss for lack of jurisdiction. Id. at 358-59 (quoting Markham, 326 U.S. at 494). We further held that, consistent with our precedent, "[w]e take a fairly broad view of the types of actions that interfere with the probate proceedings." Id. at 360. Applying these principles, we concluded that claims for undue influence, forgery, and breach of fiduciary duty as an executor would interfere with probate proceedings and were therefore subject to the probate exception. Id.

Subsequently, in 2006, the Supreme Court decided Marshall v. Marshall, which, similarly to Golden, dealt with a claim that the ultimate beneficiary of an estate fraudulently prevented the transfer of an intended gift to the plaintiff. 547 U.S. 293, 304 (2006). The Supreme Court held that the single claim at issue, for tortious interference with the plaintiff's expected gift, sought an *in personam* judgment against the defendant, not the probate or annulment of a will, nor any *res* in the custody of the probate court. Id. at 312. As such, it was not barred by the probate exception.

Marshall criticized Golden as one of many circuit court

decisions interpreting Markham "to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." Id. at 311. The Supreme Court then clarified what constitutes interference "with the state court's possession," as follows:

> [W]e comprehend the "interference" language in Markham as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. at 311-312 (citations omitted). It is clear after Marshall that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply. Insofar as Golden interpreted the probate exception as a jurisdictional bar to claims "interfering" with the probate, but not seeking to probate a will, administer an estate, or assume *in rem* jurisdiction over property in the custody of the probate court, that interpretation was overbroad and has been superseded by Marshall.

### III.

Each count in Three Keys' complaint is based on the supposition that Three Keys has an ownership interest in SR Utility. Hence, we must consider the third prohibition of the probate exception—that a federal court cannot assume *in rem* jurisdiction over estate property in the custody of the probate court. If the relevant shares of SR Utility are Estate property in the custody of the Orphans' Court, and if Three Keys' claims would

12

require a federal court to assume *in rem* jurisdiction over those shares, then it follows that the probate exception precludes the exercise of diversity jurisdiction.

The District Court ruled out the probate exception because the "record presented to the Court does not prove that the escrow account, the SR Utility shares transferred to Three Keys, and the dividends, are 'property that is in the custody of a state probate court.'" Three Keys, Ltd. v. SR Utility Holding Co., 464 F. Supp. 2d 388, 393 (D.N.J. 2006) (citing Marshall, 547 U.S. at 312). The District Court emphasized that the Orphans' Court did not exercise jurisdiction over the SR Utility shares during Basciano and Palmer's removal proceedings. Id. However, in addition to the removal proceedings, the Orphans' Court has been and remains in the process of probating the Estate. Under Section 711 of the Pennsylvania Probate, Estates and Fiduciaries Code, the Orphans' Court has exclusive jurisdiction over the distribution of a decedent's estate, which includes the decedent's personal property at the time of his or her death. 20 Pa. Cons. Stat. § 711(17).[8] Because all of the SR Utility shares were in Samuel's possession at the time of his death, they were initially part of the Estate and became property under the exclusive jurisdiction of the Orphans' Court.

Nevertheless, Basciano purported to sell 24% of the SR Utility shares to Three Keys, without acquiring Orphans' Court approval. We must determine whether this interested transaction somehow removed the shares from the exclusive jurisdiction of the Orphans' Court. We conclude that it did not.

We have held that "the estate maintain[s] a proprietary interest in any distributions prior to the Orphans' Court's

_____

[8]Section 711(17) states that "the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division: . . . Title to personal property. The adjudication of the title to personal property . . . alleged by the personal representative to have been in the possession of the decedent at the time of his death." 20 Pa. Cons. Stat. § 711(17).

13

approval." Estate of Meriano v. C.I.R., 142 F.3d 651, 661 (3d Cir. 1998). To our knowledge, the Orphans' Court has yet to rule on the Beneficiaries' objections to Basciano and Palmer's accounting, which included the SR Utility Stock Transfer. Until the Orphans' Court determines the validity of the SR Utility Stock Transfer to Three Keys, the Estate maintains its interest in the SR Utility shares, which remain property under the jurisdiction of the Orphans' Court.

The Orphans' court maintains jurisdiction over the SR Utility shares involved in the SR Utility Stock Transfer because Basciano, as the executor, was an officer of the probate court, who administered the Estate subject to that court's control. See Byers v. McAuley, 149 U.S. 608, 615 (1893) ("An administrator appointed by a state court is an officer of that court. His possession of the decedent's property is a possession taken in obedience to the orders of that court. It is the possession of the court, and it is a possession which cannot be disturbed by any other court."); In re Rentschler's Estate, 139 A.2d 910, 918 (Pa. 1958) (removing an executor because he lost the confidence of the court); In re Estate of Alexander, 758 A.2d 182, 187 (Pa. Super. 2000) (stating that an executor is an officer of the court). One mechanism by which the probate court controls an executor is by requiring him or her to request and receive probate court approval prior to engaging in interested transactions, which Basciano failed to do with respect to the SR Utility Stock Transfer.

Moreover, we note that the Orphans' Court has extensive power to remedy improper transfers of estate property. As the Pennsylvania Supreme Court has stated, "the [O]rphans' [C]ourt has jurisdiction finally to decide the question of ownership and compel a surrender to a decedent's estate of assets improperly held by one whose title is colorable only." In re Williams' Estate, 84 A. 848, 852 (Pa. 1912); see also Estate of Meriano, 142 F.3d at 661 (same); Mauser v. Mauser, 192 A. 137, 138 (Pa. 1937) ("[P]roperty admittedly belonging to the estate . . . which, it is charged, was wrongfully converted . . . after [the testator's] death . . . is within the jurisdiction of the orphans' court, regardless of who may now hold it."); cf. In re Hinds' Estate, 38 A. 599 (Pa. 1897) (affirming an order of the Orphans' Court requiring a pledgee of a ward's

14

property to return the property to the ward, when the guardian pledged the property for a loan to invest in a security in which he had a personal interest, without receiving Orphans' Court approval). We therefore conclude that the SR Utility shares remain under the jurisdiction of the Orphans' Court.

Because the SR Utility shares in question are still property under the jurisdiction of the Orphans' Court, it follows that we cannot assume *in rem* jurisdiction over that same property. See Marshall, 547 U.S. at 311-312. We recognize that the distinction between *in rem* and *in personam* is often as elusive as the boundary lines of the probate exception.[9] But at a minimum, following Marshall, an action "to dispose of property that is in the custody of a state probate court" involves the assumption of *in rem* jurisdiction over that property. Marshall, 547 U.S. at 312.

Count Two of Three Keys' complaint, labeled "Declaratory Judgment," is most clearly in violation of this principle. It seeks a

---

[9]These terms originally correlated to the types of actions and judgments available in courts acting at law and equity, respectively. See Walter W. Cook, *The Powers of Courts of Equity*, 15 COLUM. L. REV. 37, 38 (1915). Of course, in our federal system, actions at law and suits in equity have been merged into "one form of action—the civil action." Fed. Rule Civ. Proc. 2. Meanwhile, many of the functional distinctions between *in rem* and *in personam*, as bases of jurisdiction, have been abolished, in favor of less formulaic and more effective methods of ensuring that an exercise of jurisdiction is fair. See Shaffer v. Heitner, 433 U.S. 186 (1977) (holding that the statutory presence of stock certificates was an insufficient basis for attachment jurisdiction without additional minimum contacts between the jurisdiction and the litigation); Restatement (Second) of Judgments § 5. These changes accompanied the realization that both forms of jurisdiction "have the purpose and effect of determining interests of persons." Restatement (Second) of Judgments, § 6 cmt. a. Nevertheless, many substantive differences still exist between *in personam* and *in rem* jurisdiction, and the distinction is still invoked in the case law discussing the probate exception, most recently in Marshall.

federal court determination of Three Keys' ownership interest in SR Utility, which would dispose of Estate property under the jurisdiction of the Orphans' Court. However, Counts One (Minority Shareholder Oppression), Three (Breach of Fiduciary Duty), Four (Breach of the Covenant of Good Faith and Fair Dealing), and Five (Civil Conspiracy) request, on their face, the exercise of *in personam* jurisdiction. Counts One and Three allege that the Defendants, as majority shareholders and fiduciaries, are personally liable because they are preventing Three Keys from accessing its interest in SR Utility; Count Four asserts that the Defendants are personally liable because they breached the implied covenant of good faith and fair dealing implicit in the Purchase Agreement when they prevented Three Keys from enjoying its interest in SR Utility; and Count Five alleges that the Defendants are personally liable for conspiring to deprive Three Keys of its interest in SR Utility.

On the surface, these claims seek to impose liability against the Defendants as legal persons, which would call for *in personam* jurisdiction. However, not only does Three Keys seek as relief the distribution of probate property,[10] Three Keys also seeks a

---

[10]We note that while claims that seek to invoke a federal court's *in personam* jurisdiction generally do not violate the probate exception, that does not permit a court to grant as relief the possession of specific property that is within the jurisdiction of a probate court. In Wisecarver v. Moore, 489 F.3d 747, 751 (6th Cir. 2007), the Sixth Circuit held that even though the claims before it were *in personam*, the probate exception barred the court from granting as relief an order divesting the primary beneficiaries of an estate of all property retained by them. However, the Sixth Circuit remanded the case to consider other forms of relief requested, such as a monetary judgment. Id. Similarly, in Lefkowitz v. Bank of New York, 528 F.3d 102, 107 (2d Cir. 2007), the Second Circuit barred claims that sought as relief disgorgement of funds remaining under the control of the probate court. In this case, Three Keys seeks the disgorgement of property in the jurisdiction of the Orphans' Court. Like the Sixth Circuit in Wisecarver and the Second Circuit in Lefkowitz, we conclude that such relief is barred

16

determination that its interest in the SR Utility shares and dividends is superior to the interest of the Estate. Each of these claims, whether characterized as an *in personam* action or not, requires the District Court to "endeavor[] to dispose of property that is in the custody of a state probate court," which is prohibited by the probate exception. Marshall, 547 U.S. at 312; see also Byers, 149 U.S. at 618 (holding that federal courts do not have the power to "take possession of property in the hands of an administrator appointed by the state court, and thus dispossess that court of its custody").

In an effort to clarify prior case law, we note the distinction between an *in personam* action seeking a judgment that a party has the right to a distributive share of an estate, but stopping short of determining a party's interest in specific estate property, and an *in rem* action such as Three Keys', which seeks a determination of a party's interest in specific property in the custody of the probate court. The distinction mirrors the traditional understanding of a judgment *in personam*, which is "of such character that by means of it the plaintiff can, as a means of attaining the principal object of the action, subject the general assets of defendant, as distinguished from some specific property interest, to the payment of his claim." Cook, 15 COLUM. L. REV. at 120. Hence, in Markham, which arose during World War II, the Supreme Court held that a federal court possessed jurisdiction to declare that the Alien Property Custodian, acting under § 5(b)(1)(B) of the Trading with the Enemy Act, and not the decedent's American heirs-at-law, acquired the interests of German legatees in the estate of a decedent. 326 U.S. at 492-93, 495. The federal court in Markham was not asked to declare interests in specific estate assets, but rather to "decree petitioner's right in the property to be distributed after [the estate's] administration." Id. at 495.

Similarly, in Marshall v. Lauriault, 372 F.3d 175, 180-82 (3d Cir. 2004), we held that the probate exception did not apply to a dispute between beneficiaries to a trust and adult adoptees of one of the beneficiaries over their right to trust income. In Lauriault, as in Markham, after the federal court decreed rights to the estates,

---

by the probate exception.

"[t]he marshaling of that claim with others, its priority, if any, in distribution, and all similar questions, [were left] for the probate court upon presentation to it of the judgment or decree of the federal court." Pufahl v. Parks' Estate, 299 U.S. 217, 226 (1936).

Contrary to Markham and Lauriault, a principal and necessary object of Three Keys' complaint is the establishment of its property interest in SR Utility. Because that object calls for the exercise of *in rem* jurisdiction over property in the custody of the Orphans' Court, the probate exception applies, and we are without jurisdiction to proceed.

## IV.

For the foregoing reasons, the order of the District Court is vacated, and the case is remanded with instructions to dismiss for lack of jurisdiction.

18