**UNITED STATES of America,**
**Plaintiff,**

v.

**TATE & LYLE NORTH AMERICAN**
**SUGARS, INC., Defendant.**

**No. 97 CIV 9113 RMB.**

United States District Court,
S.D. New York.

Jan. 17, 2002.

Sheila M. Gowan, Assistant United States Attorney, Mary Jo White, United States Attorney for the Southern District of New York, New York City, for Plaintiff.

Mark E. Davidson, Esq., Proskauer Rose LLP, New York City, Forbes Maner, Esq., Henry B Miller, Esq., Jonathan E. Jackel, Esq. of Burt, Maner & Miller, Washington, DC, for Defendant.

## ORDER

BERMAN, District Judge.

Plaintiff, the United States of America ("Plaintiff" or the "IRS" or the "Government"), filed this action on or about December 10, 1997 to recover a $1,526,100.60 interest payment it asserts it erroneously made to Defendant, Tate & Lyle North American Sugars, Inc. ("Defendant" or "Tate & Lyle").[1] On November 26, 2001,

---

1. The funds were paid to Domino Sugar Corporation ("Domino"), as successor in interest to Amstar Sugar Corporation ("Amstar"). Domino has changed its name to Tate & Lyle North American Sugars, Inc. Answer ¶ 1. Tate & Lyle, Inc. is the parent company of Tate & Lyle.

Plaintiff moved, pursuant to Federal Rule of Civil Procedure 7, for an order disqualifying the law firm of Burt, Maner & Miller ("BM & M") from representing Defendant at trial. **For the reasons set forth below, Plaintiff's motion is denied.**

## I. Background[2]

Since at least 1990 BM & M has represented Tate & Lyle, Inc. and its subsidiaries, including Amstar, in connection with IRS tax audits. Plaintiff's Memorandum in Support of its Motion to Disqualify ("Pl's.Mem.") at 1. On December 14, 1990, Jared Twenty ("Twenty"), the director of taxes for Tate & Lyle, Inc., sent the IRS a letter ("Twenty Letter") concerning a proposed (tax) adjustment and enclosing a remittance of $6,497,710.00 ("December 1990 remittance"). Declaration of Sheila M. Gowan ("Gowan Decl."), dated November 26, 2001, Ex. N. In the letter, Twenty stated that the remittance was for an (anticipated) deficiency in tax, plus interest, resulting from the IRS' adjustment and that "[w]e respectfully request that this deposit be identified as a cash bond in your records." *Id.* Pursuant to Revenue Procedure 84–58, 1984–2 C.B. at 503, § 5.02, the remittance had the effect of stopping interest from accruing on any tax deficiency assessment. Compl. ¶ 21.

On December 14, 1990, in accordance with Amstar's instructions, the IRS prepared a Payment Posting Voucher, which identified the remittance as a "cash bond" and indicated that a Form 316(C) should be sent to Amstar. Compl. ¶ 23. In the final Payment Posting Voucher, the IRS typed the letter "X" in the box adjacent to the words "Cash Bond" and the letter "X" in the box adjacent to the words "Send 316(C)"; however, the IRS also typed the amount of the remittance, $6,497,710, be-

side the designation "Code 670," which is the code used by the IRS to indicate that a remittance is a "subsequent payment." Gowan Decl., dated October 6, 2000, Ex. 27. In September 1993, the IRS concluded its audit, determined that Amstar had overpaid its taxes, and sent Amstar $8,240,206.34 for, among other things, the December 1990 remittance (i.e., $6,497,710.00) together with interest thereon in the amount (at issue here) of $1,526,100.60. Compl. ¶¶ 30–31; Gowan Decl., dated October 6, 2000, Ex. 31. On January 25, 1996, Rosie Williams ("Williams"), a case manager at the IRS, met with Ann Harris ("Harris"), the Tate & Lyle, Inc. tax director who succeeded Twenty in 1991, and informed her that the IRS had mistakenly paid interest on the "cash bond." Gowan Decl., dated October 6, 2000, Ex. 37. By letter dated March 14, 1996, Harris advised the IRS that Defendant would not return the $1,526,100.60 stating, "We did not then, and we do not now, consider the September 1993 refund to be a return of the cash bond paid ...". Gowan Decl., dated November 26, 2001, Ex. R.

In the instant motion, Plaintiff asserts that it "expects" (Pl's. Mem. at 1) to call members of BM & M to testify at trial and the "expected testimony likely will substantially prejudice defendant by contradicting defendant's factual assertions that the December 14, 1990 letter to the [IRS] was simply a cover letter, and that, in any event, Jared Twenty lacked authority to designate the accompanying remittance as a deposit in the nature of a cash bond." Pl's. Mem. at 1. Defendant counters that Plaintiff has "fail[ed] to show specifically what testimony it will elicit from BM & M witnesses, how that testimony would prej-

---

**2.** For additional background, see this Court's Order, dated August 24, 2001 ("Order"), denying Defendant's motion for summary judg-

ment. On October 10, 2001, this Court denied Defendant's motion for reconsideration of the Order.

udice Amstar, or why such testimony is 'strictly necessary.'" Defendant's Memorandum in Opposition ("Def's.Mem.") at 3.

## II. Standard of Review

"[M]otions to disqualify opposing counsel are viewed with disfavor because they impinge on parties' rights to employ the counsel of their choice." *Fulfree v. Manchester*, 945 F.Supp. 768, 770 (S.D.N.Y. 1996). "[T]he drastic remedy of disqualification based on the advocate-witness rule is subject to strict scrutiny because of the strong potential for abuse to 'stall and derail the proceedings, redounding to the strategic advantage of one party over another.'" *Id.* (quoting *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 515 N.Y.S.2d 735, 508 N.E.2d 647, 650 (1987)). **"The party bringing the motion under [Disciplinary Rule 5–102(D) ] carries the burden to show both the necessity of the testimony and the substantial likelihood of prejudice."** *Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005, 1999 WL 349989, at *7 (S.D.N.Y. June 1, 1999) (emphasis added). "A finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. Testimony may be relevant and even highly useful but still not strictly necessary. In cases where the lawyer's testimony is highly relevant and solely within [his] possession, it is apparent that [he] must be disqualified." *Stratavest Ltd. v. Rogers*, 903 F.Supp. 663, 667 (S.D.N.Y.1995). "[T]he moving party 'bears the burden of demonstrating specifi-

cally how and as to what issues in the case the prejudice may occur.'" *Fulfree*, 945 F.Supp. at 770 (S.D.N.Y.1996) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 923 F.Supp. 61, 63 (S.D.N.Y.1996)). "For testimony to be 'prejudicial' within the meaning of DR 5–102[ (D) ], the projected testimony 'must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting the testimony.'" *Amalgamated Services and Allied Industries Joint Board v. Supreme Hand Laundry, Inc. et al*, No. 94 Civ. 2904, 1996 WL 583351, at *6 (S.D.N.Y. Oct. 9, 1996) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989)).

## III. Analysis

Plaintiff, as noted, seeks to disqualify BM & M because it "expects to call members of that firm to testify" at trial. Pl's. Mem. at 1. Plaintiff states that "likely witnesses will be Henry Miller, Esq. [ ("Miller") ], Daniel Burt, Esq. ["Burt"], Forbes Maner, Esq. ["Maner"], and possibly former BM & M associate James Hagerty, Esq. ["Hagerty"]." Plaintiff's Reply Memorandum ("Pl's. Reply Mem.") at 2, fn. 1. Plaintiff states that the BM & M attorney(s) may testify as to the following (three) items: [3]

(1) prior to December 14th, BM & M communicated verbally and in writing with Twenty, Hoyt [Twenty's assistant, Martha Hoyt ("Hoyt"),] and Friedman [Amstar's in-house counsel, Harvey

---

**3.** Plaintiff's Reply Memorandum adds additional items which appear to amplify those previously stated. *See* Pl's. Reply. Mem. at 1–2 ("[T]he government expects that BM & M attorneys will testify that . . . (3) after [December 14, 1990], BM & M did not tell the IRS that defendant did not want the 'deposit [to] be identified as a cash bond in [IRS] records;' (4) . . . BM & M did not tell the IRS that

Twenty was not authorized to designate cash bond treatment, notwithstanding that BM & M had multiple interactions with the IRS; (5) . . . BM & M reviewed the Twenty letter and obtained information that the IRS had given . . . Harris when it asked for return of the interest; and (6) BM & M reviewed Harris' 1996 memo to the IRS, which confirmed the cash bond.").

Friedman ("Friedman")] about the positions that Amstar should take concerning the proposed adjustment, and reviewed the Marshall memo [a memorandum to files, dated December 5, 1990, from Tate & Lyle, Inc. analyst T.D. Marshall ("Marshall")], which discussed how to make the remittance; (2) on December 14th, BM & M received a copy of the Twenty letter with its cash bond designation and the accompanying check; and (3) after December 14th, BM & M did not correct any supposed misunderstanding or mistake concerning the letter or the scope of Twenty's authority, notwithstanding that BM & M continued to personally interact with the IRS on audit issues, and later reviewed Ann Harris' memo to the IRS which did not dispute— indeed confirmed— the existence of the cash bond.[4]

Pl's. Mem. at 9.

### Necessity

Plaintiff contends that "BM & M attorneys are the *only* qualified witnesses who can establish that, through their own silence and failure to take action, at the very least, Twenty's authority and direction were ratified." Pl's. Mem. at 9 (emphasis in original). Defendant argues that Plaintiff has failed to meet its burden of showing the necessity of attorney testimony because, among other things, other evidence is available. Def's. Mem. at 12 ("These issues are matters about which other witnesses have testified or can testify."). *See Stratavest Ltd.*, 903 F.Supp. at 667; *Kirshon, Shron, Cornell & Teitelbaum P.C. v. Savarese*, 182 A.D.2d 911, 581 N.Y.S.2d 487 (N.Y.App.Div.1992) (testimony not "necessary" where cumulative of other evidence).

With respect to item one, Plaintiff argues that a BM & M attorney would testify about several communications which occurred "prior to December 14th."[5] Pl's. Mem. at 2–3. That these communications occurred (and, subject to appropriate privilege,[6] the surrounding circumstances, etc.) can be shown by evidence other than testimony of BM & M attorneys. *See Kirshon, Shron, Cornell & Teitelbaum, P.C.*, 182 A.D.2d at 912, 581 N.Y.S.2d 487 (attorney testimony not necessary where there is "no showing that [the attorney's] records and testimony . . . will be other than merely cumulative of the records and testimony

4. Plaintiff asserts: "The expected testimony will not impinge on privileged communications because responses to questions about whether communications on various subjects occurred are not matters protected by the attorney-client privilege. . . . In all events, what BM & M told, failed to tell, or would have told the *IRS* cannot be privileged under any circumstances." Pl's. Reply Mem. at 6 (emphasis in original).

5. Plaintiff states: "On December 4, 1990, BM & M wrote Twenty a letter outlining the positions that Tate & Lyle should take with respect to the IRS' Notices of Proposed Adjustment, including the Amstar Notice of Proposed Adjustment. On December 6, 1990, [Hoyt] . . . wrote BM & M about the Amstar proposed adjustment, and sent the firm a memorandum prepared by [Marshall]. . . . Then, on December 11, 1990, BM & M met

with Twenty and Hoyt in Illinois to discuss tax issues, including those relating to Amstar. . . . At least one of the topics discussed related to defendant's decision to send the IRS the $6,497,710.00 remittance." Pl's. Mem. at 2–3 (citations omitted).

6. The Court is not here ruling on questions of privilege. *But see Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962) ("Those questions which pertain to the date and general nature of the legal services performed . . . should be answered as they do not call for any confidential communications. . . . the privilege extends only to the substance of matters communicated to an attorney in professional confidence."); *see also* Memo Endorsement of Magistrate Judge Theodore H. Katz, dated February 17, 2000 (denying the Government's request for disclosure of certain documents),

provided by [the client]").[7] Such other evidence may include: the testimony of, among others, Twenty, Hoyt and Friedman; Defendant's privilege log; pretrial stipulation(s) between parties; and a declaration from Maner, dated February 9, 2000 ("Maner Declaration"), elaborating on certain documents listed in Defendant's privilege log. *See* Pl's. Mem. at 2–3; *see e.g.,* Gowan Decl., dated November 26, 2001, Ex. B, Maner Declaration at ¶ 8 ("The letter written by Dan Burt to Jared Twenty dated December 4, 1990, . . . contains Mr. Burt's advice to Mr. Twenty concerning the positions that members of the Tate & Lyle Inc. group should take with respect to certain Notices of Proposed Adjustment ("NOPA") from the IRS. It also discusses advice Burt, Maner & Miller gave to Amstar Sugar Corporation with respect to a NOPA it received with respect to its audit."). And, the contents of the memorandum from Marshall to files, dated December 5, 1990, may, subject to appropriate objection if any, be determined from the document itself. *See Parke–Hayden, Inc. v. Loews Theatre Management Corp.,* 794 F.Supp. 525, 528 (S.D.N.Y.1992) ("[attorney's testimony] as to the substance of the [agreement] is unnecessary because 'other evidence' is available, not the least of which is the agreement itself").

Similarly, with respect to item two, Defendant produced during discovery a copy of a fax, dated December 14, 1990, from Hoyt to BM & M, transmitting a copy of the Twenty Letter and check (Def's. Mem. at 6) which would likely be admissible. *See* Def's. Mem. at 6 ("Defendant produced a copy of that fax. Amstar has not disputed that Ms. Hoyt sent the fax. . . . A BM & M witness would add nothing to this

evidence."). Thus, along with the testimony of Hoyt, other evidence is available; and the testimony of a BM & M attorney does not appear to be necessary. *Parke–Hayden, Inc.,* 794 F.Supp. at 528.

With respect to item three, "[Plaintiff] can call any IRS witness it wants to testify whether BM & M ever attempted to correct any misunderstanding anyone in the IRS may have had about the Twenty letter or Mr. Twenty's authority. . . . The government does not need to call a BM & M lawyer to establish that fact." Def's. Mem. at 13. Plaintiff may also call Defendant's employees to testify, among other things, as to when/whether, to their knowledge, BM & M "told the IRS that defendant did not want the 'deposit to be identified as a cash bond in IRS records'" or that "Twenty was not authorized to designate cash bond treatment." Pl's. Reply Mem. at 2. The "multiple interactions with the IRS" (Pl's. Reply Mem. at 2) are documented and do not necessitate a BM & M attorney to establish. *See* Gowan Decl., dated November 26, 2001, Exs. G–L.

In addition, Defendant produced during discovery the three faxes dated January 22, 1996, February 26, 1996, and March 8, 1996, respectively, that Harris sent to Miller enclosing the Twenty Letter, information Harris received from the IRS, and a draft of Harris' memo, dated February 26, 1996, to Williams. *See id.* Exs. N, O, P and Q. The memorandum from Miller to Harris, dated March 11, 1996, is noted in Defendant's privilege log under the subject matter "Draft Note to Rosie Williams on ASC Refund," and as responsive to Plaintiff's request, *inter alia,* for all documents relating to Defendant's decision not to return the sum of $1,526,100.60 to the Gov-

---

**7.** Since other evidence is available, the Court need not analyze here the other factor(s) that can be taken into account in determining "necessity." *See Stratavest Ltd.,* 903 F.Supp. at 667 ("In cases where the lawyer's testimony is highly relevant and solely within [his] possession, it is apparent that [he] must be disqualified.").

ernment. *Id.*, Ex. E. Plaintiff also has the (final) memo Harris sent to Williams, dated March 14, 1996.[8]

### Prejudice

Plaintiff asserts that "[t]his expected testimony will flatly contradict Amstar's factual assertions ... and thus be prejudicial to Defendant." Pl's. Mem. at 11. According to Plaintiff, "all of the expected testimony directly challenges defendant's credibility and undermines its asserted legal position in this case." Pl's. Reply Mem. at 1. Defendant contends that the Government "cannot be specific about any BM & M testimony because it did not depose any BM & M witnesses" (Def's. Mem. at 8) and has not "demonstrate[d] that a BM & M lawyer's testimony will contradict or impugn a position Amstar takes in this litigation to such an extent that another firm attorney trying the case would be at pains to attack his credibility at trial." Def's. Mem. at 9.

In view of the Court's determination as to "necessity," question(s) about prejudice are not dispositive. *Soberman,* 1999 WL 349989, at *7. Overall, it does not appear that attorney testimony will add to that which is readily established by, among other things, Defendant's privilege log, the Maner Declaration, deposition testimony of Twenty, Hoyt, Friedman and others, and additional documents produced during discovery. *See Rice v. Baron,* 456 F.Supp. 1361, 1371–1373 (S.D.N.Y.1978) (testimony not "sufficiently adverse to the factual assertions or account of events offered on behalf of the client" where it "adds little, if

anything, to that which [Plaintiff] has already admitted"). Additionally, the testimony sought appears speculative, and may be subject to the attorney client privilege. *See Frias v. Frias,* 155 A.D.2d 585, 547 N.Y.S.2d 652, 653 (N.Y.App.Div.1989) ("whether counsel's projected testimony would be prejudicial to his client is 'the subject of speculation' ");[9] *Sudarsky v. City of New York,* No. 89 Civ. 5150, 1990 WL 193964, at *1 (S.D.N.Y. Nov. 28, 1990) (privilege applies to "information [conveyed] from client to counsel in connection with the rendering of legal advice").

Additionally, with respect to item one, Plaintiff argues that "[i]f Twenty's letter was a mistake, or if he in fact did lack authority, any sophisticated tax specialist who had received a copy of the letter, such as BM & M, would have immediately (or at a minimum over time) corrected it." Pl's. Mem. at 9. Defendant contends that "[Plaintiff] cannot show that any advice BM & M may have given was prejudicial to Amstar's case because it did not develop any evidence on this point.... the government's speculation is inadequate to carry its heavy burden." Def's. Mem. at 9. "The conjuring of 'perhaps possible' scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration that such testimony would be prejudicial." *Paramount Communications, Inc. v. Donaghy,* 858 F.Supp. 391, 398 (S.D.N.Y.1994).

With respect to item two, "Amstar has not disputed that Hoyt sent the fax. Al-

---

**8.** Since BM & M attorney testimony is not "necessary," the Court need not resolve Defendant's argument that "the government has not indicated how it would compel either [Miller or Hagerty] to appear to testify" because "neither man is subject to subpoena in the Southern District of New York." Def's. Mem. at 4, fn. 1.

**9.** As noted, the Government does not (already) have the testimony of the attorney(s) it expects to call as a witness(es) at trial. *See e.g., Lamborn,* 873 F.2d at 529–30 (attorney had been deposed); *Parke–Hayden, Inc.,* 794 F.Supp. at 526 (attorney had been deposed); *Ross v. Great Atlantic & Pacific Tea Company, Inc.,* 447 F.Supp. 406, 409 (S.D.N.Y.1978) (attorney had given testimony in an earlier related suit).

though Ms. Hoyt testified that she did not remember sending the fax, she did not deny having done so in her deposition." Def's. Mem. at 6. A BM & M attorney's testimony that BM & M received that fax does not appear to be "sufficiently adverse to the factual assertions" offered on behalf of Amstar. *Amalgamated Services and Allied Industries Joint Board,* 1996 WL 583351, at *6.

With respect to item three, the Government point outs that "BM & M did not correct any supposed misunderstanding or mistake concerning the letter [from Twenty] or the scope of Twenty's authority." Pl's. Mem. at 9. This statement assumes, among other things, "that BM & M had an affirmative duty to correct this misunderstanding." Def's. Mem. at 6. *See Paramount Communications, Inc.,* 858 F.Supp. at 398.

In sum, even assuming the issue of prejudice were to be reached, Plaintiff has not shown that the attorney testimony sought would be "sufficiently adverse to the factual assertions or account of events" offered by Defendant. *Amalgamated Services and Allied Industries Joint Board,* 1996 WL 583351, at *6. Disqualification of BM & M so long after the Complaint was filed and after discovery has ended is unwarranted.[10]

## IV. Conclusion

Accordingly, Plaintiff's motion is denied [59]. The parties are directed to appear at a scheduling conference with the Court on Thursday, January 24, 2002, at 10:00 a.m., in Courtroom 706 of the United States District Courthouse, 40 Centre Street, New York, New York.

---

**10.** The Court need not reach the merits of a footnote in Plaintiff's Reply Memorandum stating that, "[i]f these attorneys have knowledge that *supports* defendant's litigation position ... then BM & M also should be disqualified under Rule 5–102(A)." Pl's. Reply. Mem. at 2–3, fn.1 (emphasis in original); *see Faberware, Inc. v. International Machinery Corp.,* No. 89 Civ. 6240, 1990 WL 108397, at *1 (S.D.N.Y. July 20, 1990) ("A reply brief is just that—— a reply—— and not an occasion to raise issues for the first time.").