**John B. CAPPONI, as administrator of the estate of Louise Theresa Capponi, Plaintiff,**

**v.**

**Joann MURPHY et al., Defendants.**

**No. 08 Civ. 4449(VM).**

United States District Court, S.D. New York.

Sept. 11, 2009.

458

Edward Cohn, Irwin, Lewin, Lewin Cohn & Lewin PC, New York, NY, for Plaintiff and Counter Defendant.

Stewart A. McMillan, McMillan Constabile LLP, Larchmont, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff John B. Capponi, acting as administrator of the estate of Louise Theresa Capponi ("Plaintiff"), filed an amended complaint in this action, dated May 22, 2008 (the "Amended Complaint"), against Joann Murphy ("Joann"); Willow Lane Associates, LP ("Willow Lane"); Country Bank; and Dennis Capponi ("Dennis") (collectively, "Defendants").[1] The Amended Complaint asserts claims against Defendants for conversion, unjust enrichment, breach of fiduciary duty and an accounting of the affairs and activities

---

1. The original complaint in this action also named Willow Properties, LLC ("Willow Properties") as a defendant. The Amended Complaint did not name Willow Properties and it was dismissed from the action on May 23, 2008.

of Willow Lane. In their Verified Answer to the Amended Complaint, dated July 25, 2008 (the "Answer"), Defendants assert counterclaims against Plaintiff for an accounting of monies belonging to Louise Theresa Capponi ("Louise"), a constructive trust, common law fraud, breach of fiduciary duty, unjust enrichment and conversion. Plaintiff moves to dismiss Defendants' counterclaims and to disqualify Defendants' counsel. Defendants move to dismiss the Amended Complaint and dismiss Country Bank as a party defendant and seek leave to amend the Answer. For the reasons stated herein, Defendants' motion to dismiss the Amended Complaint is DENIED; Defendants' motion for leave to amend the Answer and Plaintiff's motion to dismiss the counterclaims are each DENIED without prejudice, pending the resolution of the claims asserted in the Amended Complaint; Defendants' motion to dismiss Country Bank as a party defendant is DENIED; and Plaintiff's motion to disqualify Defendants' counsel is DENIED.

## I. *BACKGROUND* [2]

Louise had two sons, Dennis and John Capponi ("John"). She owned a 20% limited partnership share in Willow Lane, a real estate holding company that owned a building at 3111 Willow Lane in Bronx, New York (the "Building"). In 2005, Willow Lane sold the Building and distributed the proceeds of the sale to its partners. Louise's share of these proceeds totaled $216,000. Her sister, Joann, who was the general partner of Willow Lane, gave a check representing Louise's share of the proceeds to Dennis. This check was later deposited by Dennis in an account at Country Bank located in New York state, of which Joseph M. Murphy, Joann's husband, is the Chairman. There is no account in Louise's name at Country Bank.

In August of 2005, Dennis initiated a guardianship proceeding in New York state court, seeking an order appointing him guardian of Louise because she was elderly, ill and unable to provide for her own personal needs. At the proceeding, Judge Alexander W. Hunter, Jr. adjudged Louise to be a person in need of a guardian, and John was appointed guardian over his mother, with the consent of Dennis and Joann.[3]

Following the guardianship proceeding, John moved Louise to Virginia, where he lives. Louise died intestate on March 11, 2007 in Clarke County, Virginia. The circuit court in Clarke County granted John letters of administration in connection with Louise's estate on May 16, 2007.

John initiated this action as administrator of Louise's estate, seeking to recover Louise's share of the Willow Lane proceeds from Defendants. Defendants assert counterclaims stemming from John's alleged mishandling of Louise's monies both before and after her death. Both sides move to dismiss the other's claims and Plaintiff moves to dismiss Defendants' counsel. Defendants also seek dismissal of

---

**2.** The following factual background is derived from the Amended Complaint, the Answer and documents attached thereto or referenced therein. Except where specifically referenced, no further citation to these sources will be made. In deciding a motion to dismiss, the Court may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings. *See Miller v. Lazard, Ltd.,* 473 F.Supp.2d 571, 578 (S.D.N.Y.2007). The Court accepts all well-pleaded facts in the non-movant's pleading as true for the purpose of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008).

**3.** It is unclear whether John ever became Louise's legal guardian because there is a dispute between the parties regarding whether John ever posted the bond that Defendants allege was required for appointment.

Country Bank because they allege that the Court does not have personal jurisdiction over Country Bank.

## II. *DISCUSSION*

### A. *PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT*

#### 1. *Amended Complaint*

Plaintiff alleges that Defendants took Louise's share of the proceeds from the sale of the Building and deposited them in someone else's account at Country Bank, for which he asserts causes of action for conversion and unjust enrichment. For these causes of action, Plaintiff seeks damages of $216,000, plus interest. Plaintiff's third cause of action alleges that Joann breached the fiduciary duties she owed to Louise as general partner of Willow Lane by failing to make payment to Louise for her share of the proceeds from the sale of Willow Lane's building and that the estate has been damaged in the amount of $216,000, plus interest, by this breach. Lastly, Plaintiff demands an accounting of the affairs and activities of Willow Lane, so that any monies that allegedly were wrongfully taken or withheld from Louise might be discovered and returned to the estate, with interest.

Defendants move to dismiss the Amended Complaint, arguing that the Virginia probate court does not have jurisdiction over Louise's estate and therefore John's letters of administration are void and he has no authority to bring an action on behalf of Louise's estate. They argue that because Louise was incompetent at the

time she moved from New York to Virginia, she was not capable of changing her domicile and, thus, was never domiciled in Virginia. They further assert that John moved Louise to Virginia in violation of the requirements of his guardianship of her. Plaintiff counters that Defendants are asking this Court to serve as an appellate court for the Virginia action and to remove the case from that state to New York, which, he argues, this Court does not have the authority to do.

#### 2. *Defendants' Counterclaims*

Defendants allege that John obtained power of attorney over Louise in about November of 2001. They assert that he used this power, and later his position as guardian and then administrator, to dissipate Louise's assets for his own benefit. Defendants demand an accounting of Louise's monies to determine how they were expended. Defendants also seek a constructive trust to be imposed upon the $216,000, which represents the "portion of Louise's Estate in New York State." (Answer ¶ 63.) They argue that a constructive trust is appropriate because Plaintiff breached the fiduciary duties he owed to Defendants by misappropriating funds from Louise during her lifetime and from her estate following Louise's death.[4] Third, they allege Plaintiff committed common law fraud by making reckless or intentional misrepresentations of material fact concerning the use of Louise's monies and accountings of these funds. Defendants claim to have relied to their detriment on these false representations in consenting to John's power of attorney and guardianship over Louise, and they claim

---

**4.** Throughout the Answer, Defendants allege wrongdoing by "Plaintiff." In this action, Plaintiff is John, acting as administrator of Louise's estate. In their briefs, Defendants ask to amend the Answer to add John, as an individual, as a counterclaim defendant for some of their causes of action. Because Defendants did not provide a proposed amended answer, it is not clear which causes of action they wish to assert against John, as an individual, and which they wish to assert against John, as administrator.

damages of $216,000. Defendants further allege that they were damaged in the amount of $216,000 as a result of John's breach of the fiduciary duties he owed to Louise and her distributees because he had power of attorney and guardianship over Louise. Defendants' final causes of action for unjust enrichment and conversion allege that John used the access he had to Louise's monies because of his power of attorney, guardianship and position as administrator of Louise's estate to take Louise's monies and use them for his own benefit. Defendants claim to have been damaged in the amount of $216,000 by each of these causes of action.

Plaintiff moves to dismiss Defendants' counterclaims, arguing that they are claims against John, as an individual, and not against Plaintiff here, John, as administrator. He also argues that dismissal is warranted because Defendants failed to assert grounds for diversity jurisdiction by not pleading an amount in controversy over $75,000. Defendants ask the Court for leave to replead to add John, as an individual, to the action as a third-party counterclaim defendant and to explicitly assert a basis for jurisdiction. Plaintiff argues that even if Defendants replead to remedy those issues, the counterclaims would still fail because Defendants do not have standing to assert them as they did not suffer any damages. Plaintiff also characterizes Defendants' counterclaims as conclusory and argues that they should be dismissed because Defendants have failed to substantiate them with any factual allegations.

Lastly, Plaintiff urges the Court to dismiss the counterclaims because of the pending estate proceedings in Virginia for two reasons. First, he argues that the litigation of some of the issues raised in the counterclaims would interfere with the Virginia court's ability to administer Louise's estate, and therefore falls within the probate exception to federal court jurisdiction. Second, he argues that this Court should decline to hear the counterclaims because there is a pending litigation—the Virginia estate proceeding—in which these same issues may be addressed.

Defendants counter that the probate exception does not apply to these circumstances because the funds at issue are not a part of the estate. Second, they argue that their proposed tort claims against John as an individual are separate from the administration of the estate. They further assert that Dennis has standing to assert the counterclaims as a beneficiary of Louise's estate.

### 3. *Rule 12(b)(6)*

 In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is appropriate if the non-movant has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal*, — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially plausible claim, the party asserting the claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Secs. Litig.*, 383

F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor. *See Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950.

### 4. *Probate Exception*

■ The "probate exception" to federal jurisdiction is a judicially created, "longstanding limitation[ ] on federal jurisdiction" that has historical, rather than constitutional, roots. *Marshall v. Marshall*, 547 U.S. 293, 298, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). In the past, this doctrine has been applied by federal courts with some difficulty, possibly arising from a test that the Supreme Court recently acknowledged was "not a model of clear statement." *Id.* However, in 2006 the Supreme Court clarified the exception, explaining that it "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311–12, 126 S.Ct. 1735; *see also Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir.2007) (applying the probate exception as articulated in *Marshall*). While the probate exception is no longer interpreted as barring federal courts from hearing cases that would "interfere" in *any* way with probate proceedings, *Lefkowitz*, 528 F.3d at 106, it does bar federal courts from hearing claims that address purely probate matters or "endeavor[ ] to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311, 126 S.Ct. 1735.

To determine whether the probate exception divests a federal court of jurisdiction, the court must determine whether it is being asked to do one of the three things proscribed under that exception: "(1) probate or annul a will; (2) administer a decedent's estate; (3) assume *in rem* jurisdiction over property that is in the custody of the probate court." *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 227 (3d Cir.2008) (*citing Marshall*, 547 U.S. at 311–12, 126 S.Ct. 1735).

In this case, Louise died intestate; thus, neither party seeks to have the Court probate or annul a will. However, the Court must analyze whether the claims asserted in the Amended Complaint or Answer fall within the exception. In addition, the jurisdictional arguments Defendants advance also raise probate exception concerns.

### 5. *Motion to Dismiss the Amended Complaint*

■ Plaintiff alleges that Defendants wrongfully withheld $216,000 from Louise during her lifetime. Therefore, he asks the Court to award him, as representative of Louise's estate, this money, plus interest. Plaintiff alleges that these funds represent the entirety of Louise's estate assets. The Court finds that these claims do not fall within the probate exception and thus it has jurisdiction over the causes of action asserted in the Amended Complaint.

First, Plaintiff is not asking this Court to administer Louise's estate; he has already received letters of administration from the Virginia court and asserts that the Virginia court has jurisdiction over Louise's estate and its administration.

Second, the Court must determine whether resolution of the claims asserted would require it to "dispose of property that is in the custody of a state probate court." *Marshall,* 547 U.S. at 312, 126 S.Ct. 1735. This determination has been framed by some courts as assessing whether the party is seeking an *in personam* judgment or asking the court to exercise *in rem* jurisdiction over a *res* which the state probate court has already exercised *in rem* jurisdiction. *See Marshall,* 547 U.S. at 311–12, 126 S.Ct. 1735; *Lefkowitz,* 528 F.3d at 107–08; *Three Keys Ltd.,* 540 F.3d at 229; *Lamica v. LaPierre,* No. 05 Civ. 964, 2006 WL 3423861, at *2 (N.D.N.Y. Nov. 28, 2006).

■ Because the money at issue was not in Louise's possession at the time of her death and is currently deposited in a bank account in New York, the Virginia court administering her estate is not exercising *in rem* jurisdiction over these funds at this time. *See Abercrombie v. Andrew College,* 438 F.Supp.2d 243, 254 (S.D.N.Y. 2006) (distinguishing a case barred by the probate exception in which "the property at issue ... remained in the decedent's possession until her death" from the one at bar in which the disputed property was not in decedent's possession at the time of her death, and was therefore not under the control of the probate court). Where a plaintiff seeks to "recover assets allegedly in [a defendant's] possession so that they may be returned to the estate," the probate exception does not apply. *Popple v. Crouse,* No. 06 Civ. 1567, 2007 WL 2071627, at *2 (D.Conn. July 13, 2007) (denying motion to dismiss claims of unjust enrichment, breach of fiduciary duty, conversion and theft brought by administrator of estate against defendant allegedly in possession of estate funds); *see also Groman v. Cola,* No. 07 Civ. 2635, 2007 WL 3340922, at *5 (S.D.N.Y. Nov. 7, 2007) (distinguishing instances in which the probate exception would not apply because

plaintiff seeks " 'new money' to be paid into the Estate," from those in which the probate exception would apply because the plaintiff seeks "existing money to be distributed out of the Estate"). Therefore, the probate exception does not apply to the causes of action asserted in the Amended Complaint.

Defendants move to dismiss the Amended Complaint on the grounds that the Virginia probate court does not have jurisdiction over Louise's estate and, therefore, John cannot bring an action as administrator of her estate. First, in considering a motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true, and draws all reasonable inferences in plaintiff's favor. *See Iqbal,* 129 S.Ct. at 1950; *Chambers,* 282 F.3d at 152. The Court is also free to consider documents attached to the Amended Complaint or referenced therein when deciding such a motion. *See Miller,* 473 F.Supp.2d at 578. A certification that John has been "duly qualified as Administrator of the Estate of Louise Theresa Capponi," signed by the Deputy Clerk of the Circuit Court of the County of Clarke, Virginia is attached to the Amended Complaint. (Amended Complaint, Ex. A.)

■ The Virginia court has exercised jurisdiction over the estate by issuing letters of administration to John. Defendants urge this Court to reject the Virginia court's determination regarding jurisdiction. The Court declines to conduct such a review and accepts Virginia's application of state law to the state probate proceeding. "[F]ederal courts should generally refrain from ... interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Judicial Conduct,* 351 F.3d 65, 74 (2d Cir.2003) (*citing Younger v. Harris,* 401 U.S. 37, 43–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). The principles of comity and federalism suggest that this

Court accept the Virginia court's determination. *Id.* (*citing Schlagler v. Phillips,* 166 F.3d 439, 442 (2d Cir.1999)).

Defendants have yet to appear in the state proceedings, much less raise their objections there. If the state court did make a legal error in exercising jurisdiction, it is in the state's interest to correct its own errors. *Id.* (*citing Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 197 (2d Cir.2002)). Further, if this Court were to grant Defendants' motion to dismiss on this ground, it would tread dangerously close to administering an estate—an activity expressly barred by the probate exception. *Marshall,* 547 U.S. at 311–12, 126 S.Ct. 1735; *see also Jones v. Brennan,* 465 F.3d 304, 308 (7th Cir.2006) (finding that litigant was "complaining simply about the maladministration of her father's estate by the [state] probate court, and [her] complaint, brought while the probate proceedings were in progress ... was tantamount to asking a federal district court to take over the administration of the estate"). Therefore, the Court finds that John has sufficiently alleged his authority to bring causes of action on behalf of the estate, and denies Defendants' motion to dismiss.

### 6. *Motion to Amend Answer and Motion to Dismiss Counterclaims*

Defendants state in their reply brief that they seek an order from this Court:

(1) assuming full or partial jurisdiction over the matters in dispute, and/or (2)[ ] granting the Defendants leave to bring an estate proceeding in New York State (and holding that the Virginia Court never had jurisdiction in the first place), and/or (3) [granting] whatever other and further relief this Court deems to be just and proper.

(Defendants' Reply Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss and in Further Support of Defendants' Motion to Dismiss and to Amend Answer, dated December 5, 2008 ("Defs.' Reply"), at 10.)

■■■ Defendants have not asked this Court to administer Louise's estate, an undertaking "few practitioners would be so misdirected as to seek" because it is explicitly prohibited by the probate exception. *Abercrombie,* 438 F.Supp.2d at 252 (*citing Moser v. Pollin,* 294 F.3d 335, 340 (2d Cir.2002)). However, Defendants' requests suggest that they are seeking an injunction barring the Virginia court from continuing to exercise jurisdiction over Louise's estate, and ordering New York state courts to administer the estate. Granting this request would require the Court to intervene in the administration of the estate by the Virginia court, something that is prohibited by the probate exception.

Even if this Court were not divested of jurisdiction over such requests by the probate exception and were persuaded by Defendants' jurisdictional arguments, it could not issue an order directing Virginia to stop exercising jurisdiction over the estate and directing New York to administer Louise's estate. *See* 28 U.S.C. § 2283 ("A Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment."); *Younger,* 401 U.S. at 43, 91 S.Ct. 746; *Glatzer v. Barone,* 614 F.Supp.2d 450, 456–61 (S.D.N.Y.2009) (discussing the "longstanding ... policy of imposing rigid constraints on federal court authority to issue injunctions to restrain the commencement or completion of state court proceedings"). Therefore, the Court denies Defendants' requests to the extent they seek an injunction against the Virginia or New York courts.

As to Defendants' claims for money damages, the Court must determine whether the resolution of these claims would require it to "dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 312, 126 S.Ct. 1735. Defendants allege that John has mishandled Louise's assets.[5] Defendants allege that John misappropriated monies that include funds Louise received as income from Willow Lane, benefits Louise was paid by the New York State Worker's Compensation Fund, and funds Louise held in accounts at various banks. However, the relief Defendants seek in the Answer is an accounting of Louise's monies, a constructive trust over the $216,000 they claim "represent[s] the portion of Louise's Estate in New York State," (Answer ¶ 63), and damages of "$216,000 together with interest, costs and disbursements" for causes of action three through six. (*Id.* at ¶¶ 68, 73, 79, 84.)

Defendants' counterclaims suggest to the Court that Defendants are not seeking an in *personam* judgment against John, but rather are seeking to direct the disbursement of the $216,000 representing Louise's share of the Willow Lane proceeds. The Court is concerned that resolution of the counterclaims potentially would require the Court to dispose of estate property. The parties agree that these funds are currently deposited an interest bearing account in Country Bank and are not in the custody of the state probate court. However, if Plaintiff prevails on his claims, this same $216,000, plus interest accrued, would be returned to the Virginia court administering Louise's estate, and, indeed, would constitute the assets to be distributed by the probate court.

██ In reviewing a motion to dismiss, the Court should first address grounds that challenge its subject matter jurisdiction because, absent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further. *See Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir.2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." (internal citations and quotation marks omitted)); *Can v. United States*, 14 F.3d 160, 162 n. 1 (2d Cir.1994) (stating "in most instances the question whether a court has subject-matter jurisdiction is, conventionally and properly, the first question a court is called on to consider").

If the Plaintiff prevails on the claims in the Amended Complaint, the $216,000 will be returned to Louise's estate in the Virginia state court proceeding and this Court will no longer be able to entertain claims regarding the disbursement of those funds because the probate exception will deprive it of jurisdiction. Therefore, the Court finds it prudent to set aside the counterclaims, and deny without prejudice Defendants' motion to amend the Answer and Plaintiff's motion to dismiss these claims, until Plaintiff's claims can be resolved.

The Court sees no reason Plaintiff's claims could not be resolved quickly. Al-

---

5. As noted above, Defendants initially asserted these counterclaims against Plaintiff; however, they have since sought leave to amend the Answer to add John, as an individual, as a third party counterclaim defendant. Defendants also wish to amend the Answer to state a ground for jurisdiction in diversity, and explicitly claim an amount in controversy over $75,000, but have made no mention of amending to alter the remedies they seek. Because they have offered no proposed amended answer, the Court is left to assume that, if one were submitted, it would only be amended to add John, as an individual, as a counterclaim defendant and state grounds for jurisdiction.

though Defendants do not concede the allegations made in the Amended Complaint, the parties appear to be in relative agreement regarding many salient facts: Louise's right to the $216,000 (Amended Complaint ¶¶ 13, 21, 23; Answer ¶ 35); who took possession of the money when it was distributed from Willow Lane (Amended Complaint ¶¶ 21, 23, 25; Answer ¶¶ 37, 38); and the current location of the money (Amended Complaint ¶¶ 22, 26; Answer ¶ 38). Therefore, the Court will most likely be able to resolve Plaintiff's claims expeditiously and can then make a determination regarding its jurisdiction over Defendants' claims.

### B. *DEFENDANTS' MOTION TO DISMISS COUNTRY BANK AS A PARTY DEFENDANT*

#### 1. *Defendants' Motion*

Defendants move to dismiss Country Bank as a party defendant because the Court lacks personal jurisdiction over Country Bank. They argue that Plaintiff's allegations regarding Country Bank's involvement amount to accusations that Country Bank is a stakeholder in this litigation and not a tortfeasor because Plaintiff has not sufficiently alleged Country Bank's knowledge that the funds it received for deposit were misappropriated. Plaintiff counters that Country Bank is a tortfeasor, and that knowledge on its part has been alleged because the check for $216,000 from Willow Lane was written to "Louise Capponi" but was deposited at Country Bank into an account belonging to someone other than Louise.

#### 2. *Legal Standard*

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996) (*citing Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)).

In a diversity action, a federal court generally may exercise personal jurisdiction to the same extent as courts of general jurisdiction of the state in which the federal court sits. *See* Fed.R.Civ.P. 4(k)(1)(A). The Court must determine whether the forum state grants statutory authority for jurisdiction. *See Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F.Supp.2d 202, 206 (E.D.N.Y.2006). Under New York law, the applicable statutes are N.Y. C.P.L.R. § 301 ("§ 301") and N.Y. C.P.L.R. § 302 ("§ 302"). *See Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ 3897, 2008 WL 4449314, at *8 (S.D.N.Y. Sept.29, 2008). The two statutes differ in that § 301 is a general jurisdiction statute, while § 302 is a specific jurisdiction statute; § 302 requires that the cause of action be related to the factors giving rise to jurisdiction, while § 301 does not. *See McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981).

Under § 301, a court has jurisdiction over a defendant if that defendant is "present" in the state, and a corporate defendant is present in New York state if that corporation is "doing business" in the state. *See* N.Y. C.P.L.R. § 301; *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir.2000). "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action ... if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Wiwa*, 226 F.3d at 95 (*quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985)).

### 3. *Discussion*

■ The arguments Defendants make in support of their motion relate to whether, in New York, allegations that a party was a stakeholder are sufficient to maintain specific jurisdiction over that party. However, here the Plaintiff alleges, and Defendants admit, that Country Bank is a "banking institution organized under and by virtue of the laws of the state of New York." (Amended Complaint ¶ 10; *see also* Answer ¶ 2.) Neither party alleges any activities by Country Bank outside of New York, and both parties discuss a deposit made at Country Bank in New York. The Court finds that Country Bank is subject to the general jurisdiction of this Court as it is incorporated and doing business in New York, and therefore the Court need not make findings regarding Country Bank's actions with respect to the specific claims asserted in this action. *See Wiwa*, 226 F.3d at 95; *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.2002).[6]

### C. *PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' COUNSEL*

#### 1. *Plaintiff's Motion*

Plaintiff seeks to disqualify Defendants' counsel, McMillan, Constable, Maker & Perone, LLP and advances two arguments in support of this motion. First, Plaintiff argues that Defendants have conflicting interests and therefore defense counsel should not represent all of them in this action. Plaintiff speculates that Dennis could allege that the scheme to withhold

Louise's money was put forth by Joann, or that Joann and Willow Lane may have claims against Dennis for failing to properly distribute the Willow Lane proceeds. Plaintiff also asserts that Dennis may have claims against defense counsel Stewart McMillan ("McMillan") for McMillan's failure to protect Louise's interests with regard to state and federal taxes liabilities. Second, Plaintiff asserts that McMillan, who has been representing some of the Defendants since at least the guardianship proceeding in 2005, may be called as a witness in this action, and therefore should withdraw from representation. Plaintiff asserts that McMillan might be called to testify as to the whereabouts of the funds at issue, representations he made regarding Louise's tax liabilities, his communications with Louise's accountant, Jerry Kaufman ("Kaufman"), and his involvement with attempts to secure a bond for John's appointment as guardian over Louise.

Defendants argue that this motion is meritless, and is being advanced by Plaintiff for tactical reasons, and has no merit. They assert that Defendants are aligned in their interests. According to Defendants, Joann and Dennis refused to turn the $216,000 over to John because they did not trust him, not because they each believed they had a claim to the funds. They also argue that McMillan has no particular knowledge of the facts at issue that would necessitate his testimony in this matter.

#### 2. *Legal Standard*

■ Trial courts may use their power to disqualify counsel "where neces-

---

**6.** The cases Defendants cite for support of their argument analyze specific jurisdiction under § 302, because the defendants in those cases were non-residents and were not subject to the general jurisdiction of § 301. *See Langenberg v. Sofair*, No. 03 Civ. 8339, 2006 WL 2628348, at *1 (S.D.N.Y. Sept. 11, 2006) (analyzing jurisdiction under § 302 over Maryland resident who had no financial or prop-

erty interests in New York); *Devinsky v. Kingsford*, No. 05 Civ. 2064, 2008 WL 857525, at *5 (S.D.N.Y. March 31, 2008) (analyzing jurisdiction under § 302 over Florida domiciliary who had no business or contact with New York). Defendants may have realized the error of their argument, as no mention of the personal jurisdiction issue is raised in their reply brief. (Defs.' Reply.)

sary to preserve the integrity of the adversary process in actions before them." *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). However, motions to disqualify opposing counsel are disfavored in this Circuit "because they are 'often interposed for tactical reasons' and result in unnecessary delay." *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991) (*quoting U.S. Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985)). Because disqualification impinges on a party's right to select counsel of its choosing, it is considered a "drastic measure." *Ritchie v. Gano*, No. 07 Civ. 7269, 2008 WL 4178152, at *2 (S.D.N.Y. Sept. 8, 2008) (citations omitted). District courts in this Circuit have been instructed to take a "restrained approach" when analyzing these motions. *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir.1980). The Court "must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel." *Papyrus Tech. Corp. v. New York Stock Exch.*, 325 F.Supp.2d 270, 276 (S.D.N.Y. 2004) (*citing Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *Government of India v. Cook Indus.*, 569 F.2d 737, 739 (2d Cir.1978); *Fields–D'Arpino v. Restaurant Assocs., Inc.*, 39 F.Supp.2d 412, 415 (S.D.N.Y.1999)).

Under the New York Rules of Professional Conduct, effective as of April 1, 2009, with very limited exceptions a "lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.29. Courts have interpreted this rule to require disqualification where the attorney's testimony is "necessary." *Gabayzadeh v. Taylor*, 639 F.Supp.2d 298, 302–03 (E.D.N.Y.2009) (*quoting S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*,

69 N.Y.2d 437, 515 N.Y.S.2d 735, 508 N.E.2d 647, 651 (1987) (internal quotation omitted)).

### 3. *Discussion*

■ The Court finds that Plaintiff has not made a sufficient showing to support disqualification of Defendants' counsel at this stage. Plaintiff's claims regarding the alleged conflicts that exist between Defendants are pure speculation at this point. The record as it exists now suggests that only Dennis is making a legal claim to the money at issue; the remaining Defendants are aligned in their goal to withhold the money from John, but are not claiming they have a right to any portion of the $216,000. Even if potential conflicts at some point do rise above the speculative level, Defendants could consent to the continued joint representation and waive any future challenges based on the conflicts. *See Oneida of Thames Band v. New York*, 757 F.2d 19, 22 (2d Cir.1985) (holding that to waive a conflict, the court must be satisfied that the waiver was made "knowingly and intelligently" and that other parties are entitled to an on-the-record consent (*citing In re Taylor*, 567 F.2d 1183, 1191 (2d Cir.1977))).

■ As to Plaintiff's claims that McMillan will be called to testify, the so-called "witness-advocate" rule applies in two situations: those in which the lawyer comes to believe that he or she ought to be called as a witness on behalf of his client; and those in which the lawyer may be called as a witness other than on behalf of his client. *See Ross v. Great Atl. & Pac. Tea Co.*, 447 F.Supp. 406, 408 (S.D.N.Y. 1978). Plaintiff's motion suggests that Plaintiff intends to call McMillan and that the testimony Plaintiff would solicit from him would be adverse to Defendants' factual assertions.

The movant bears the burden of showing the "necessity of the testimony and the substantial likelihood of prejudice." *United States v. Tate & Lyle North Am. Sugars, Inc.*, 184 F.Supp.2d 344, 346 (S.D.N.Y.2002) (*citing Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005, 1999 WL 349989, at *7 (S.D.N.Y. June 1, 1999)). In addition, to succeed on a motion for disqualification in these circumstances, the movant must show "specifically how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial." *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989) (internal citation and quotation marks omitted).

Plaintiff only speculates as to the nature of the testimony McMillan would give. McMillan denies having any knowledge that would form the basis for testimony that would be adverse to his clients' interests. To the extent that he has knowledge regarding the issues at hand, he believes Plaintiff's counsel has similar knowledge.

The information Plaintiff intends to solicit from McMillan may be readily available from other sources. For example, Plaintiff wishes to question McMillan about his conversations with Kaufman. Plaintiff might be able to call Kaufman to testify instead of McMillan, or use Kaufman's accounting records and other documents should Plaintiff wish to introduce evidence on this topic. Plaintiff has not met his burden in showing that McMillan's testimony is "necessary." *See Tate & Lyle*, 184 F.Supp.2d at 346 ("Testimony may be relevant and even highly useful but still not be strictly necessary.").

Plaintiff has also failed to meet his burden in showing that McMillan's testimony would be "sufficiently adverse to the factual assertions or account of events offered on behalf the client" to warrant disqualification. *Lamborn*, 873 F.2d at 531.

For example, Plaintiff claims that McMillan has knowledge regarding the whereabouts of Louise's share of the Willow Lane profits, but the current location of the funds does not appear to be a point of contention between the parties. The Court is not persuaded that, should McMillan testify on any of the topics Plaintiff suggests, his testimony would be adverse to his clients' interests. Plaintiff's motion for disqualification is therefore denied.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Joann Murphy, Willow Lane Associates, LP, Country Bank and Dennis Capponi ("Defendants") to dismiss the amended complaint of plaintiff in this action (Docket No. 37) is DENIED; and it is further

**ORDERED** that Defendants' motion to dismiss Country Bank for lack of personal jurisdiction (Docket No. 37) is DENIED; and it is further

**ORDERED** that the motion of plaintiff John Capponi, as administrator of the estate of Louise Capponi ("Plaintiff"), to disqualify Defendants' counsel (Docket No. 15) is DENIED; and it is further

**ORDERED** that Defendants' motion for leave to amend the answer (Docket No. 37) is DENIED without prejudice pending the resolution of Plaintiff's claims; and it is further

**ORDERED** that Plaintiff's motion to dismiss Defendants' counterclaims (Docket No. 15) is DENIED without prejudice pending the resolution of Plaintiff's claims.

The parties are directed to appear for a conference on September 17, 2009 at 9:15 a.m. to discuss pretrial proceedings, and in preparation for such conference to confer

and prepare a proposed Case Management Plan in the form provided by the Court.

**SO ORDERED.**